STATE OF VERMONT

ENVIRONMENTAL COURT

<table>
<tr><td></td><td>}</td><td></td></tr>
<tr><td>In re: Onion River Campground</td><td>}</td><td>Docket No. 16-1-09 Vtec</td></tr>
<tr><td>(Appeal of Fortin)</td><td>}</td><td></td></tr>
<tr><td></td><td>}</td><td></td></tr>
</table>

Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicant Dennis Fortin (Appellant) appealed from one condition imposed in a decision of the Development Review Board (DRB) of the Town of Marshfield, granting conditional use approval for him to operate the preexisting Onion River Campground from April 1 to December 1 annually.  Appellant is represented by L. Brooke Dingledine, Esq.; and the Town is represented by Paul Gillies, Esq.

Both parties have moved for summary judgment. Summary judgment is appropriate "only where, taking the allegations of the nonmoving party as true, it is evident that there exist no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Fritzeen v. Trudell Consulting Engineers, 170 Vt. 632, 633 (2000) (mem.).  When presented with cross-motions for summary judgment, the Court considers each motion independently and "afford[s] all reasonable doubts and inferences to the party opposing the particular motion under consideration."  In re Chimney Ridge Road Merged Parcels, No. 208-9-08 Vtec, slip op. at 2 (Vt. Envtl. Ct. July 31, 2009) (Durkin, J.) (citing DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609).  The following facts are undisputed unless otherwise noted.

Appellant owns an approximately 23.5 acre parcel of property located at 61 Onion River Road in the Town of Marshfield. Appellant operates the Onion River Campground on approximately ten acres of the property in the Agricultural and Rural

1

Residential zoning district.[1]  An existing single-family dwelling, two barns, a bath house, and six septic hookups are located on the property in the area of the campground.  None of the materials provided to the Court indicate the number of camp locations the campground can accommodate at any one time, or whether all users of the campground park travel trailers on site, or whether some visitors use freestanding tents.

The Onion River Campground use was in existence on the property prior to 1972, when the Town of Marshfield first adopted a zoning ordinance.  In the present case, the parties have not provided the 1972 Zoning Regulations or any other edition of the Zoning Regulations prior to the Zoning Regulations as amended in 2009 (the 2009 Zoning Regulations).[2]  The parties have not provided any facts relating to the historical use of the campground when the 1972 or any later Zoning Regulations were adopted.[3]

---

[1]  Although the DRB decision on appeal in this matter, issued on January 18, 2009 (January 2009 DRB Decision), refers to the property as a whole as being located in three zoning districts, it is evident from the discussion in paragraph 7 of that decision that the campground use is located in only one of those districts: the "Agricultural and Rural Residential" zoning district.  See 2009 Town of Marshfield Zoning Regulations § 420 [hereinafter 2009 Zoning Regulations].

[2]  The 2006 Zoning Regulations were provided in a related case, Docket No. 94-5-08 Vtec, which is now closed.

[3] A DRB decision regarding Docket No. 94-5-08 Vtec, issued on April 16, 2008 (April 2008 DRB Decision) and not directly at issue in this appeal, refers to the campground as having been "grandfathered" as a "seasonal campground."  April 2008 DRB Decision, at 1.  However, without knowing the provisions of any given version of the Zoning Regulations as to campgrounds, and the nature of the campground's operation at that time, it is not possible to determine when any aspect of Appellant's business acquired grandfathered (or preexisting, nonconforming use) status.  See 24 V.S.A. § 4303(15) (defining "nonconforming use" as "use of land that does not conform to the present bylaws but did conform to all applicable laws, ordinances, and regulations prior to the enactment of the present bylaws, including a use improperly authorized as a result of error by the administrative officer").

Appellant purchased Onion River Campground in 1989. The Court has not been provided with the minutes of a September 20, 2005 Selectboard meeting; however, the April 2008 DRB Decision refers to several statements made by Appellant at that meeting. Specifically, the April 2008 DRB Decision refers to Appellant's statements that he started using the campground "for year-round occupancy" in 1991, and that, as of that 2005 Selectboard meeting, the campground had "eight year-round families." April 2008 DRB Decision, at 1.

After discussions between the Zoning Administrator and Appellant regarding whether the campground was being used to house year-round residents, Appellant's former attorney sent a letter to the Town of Marshfield Selectboard on behalf of Appellant. A copy of this October 14, 2005 letter has not been provided to the Court; however, the April 2008 DRB Decision refers to the letter as stating that "Mr. Fortin has notified all present occupants of the campground that they must leave by December 1, 2005." Id. at 2.

On November 9, 2005, the Zoning Administrator sent a letter to Appellant stating: "We understand that you will voluntarily come into compliance with Marshfield's Zoning Regulations and that the use of the campground will revert to seasonal use only (May 15 to October 15), effective December 1, 2005." Letter from Robert Light, Zoning Administrator, to Dennis Fortin (Nov. 9, 2005). The second paragraph of the letter stated in full that "[w]e further understand that there will be no individuals residing on the property other than in your residence." Id.

While the letter was not styled as a Notice of Violation, it also stated that "[s]hould we discover this not to be the case thereafter, we will impose a fine of [$100 per day] for each day of the violation." Id. After the Zoning Administrator's signature, the letter contained the statement that "[y]ou have a right to appeal this decision to the Marshfield [DRB] within 15 calendar days of the date of this letter, in writing, giving your reasons of the appeal." Id. After giving the address and filing fee for such an

appeal, the letter stated "[f]ailure to appeal this decision within that time may prevent you from raising the issues in any future proceeding." Id.

Two years later, on October 24, 2007, the Zoning Administrator issued a Notice of Violation to Appellant for violations of the Zoning Regulations and the November 9, 2005 letter, stating that because Appellant had not appealed the November 9, 2005 letter to the DRB, he was "bound to the seasonal use only (May 15th to October 15th)." Appellant appealed the Notice of Violation to the DRB, and appealed the DRB's decision upholding the Notice of Violation to this Court in Docket No. 94-5-08 Vtec.

The Notice of Violation appeal before this Court was held in abeyance by agreement of the parties to allow Appellant to apply for conditional use approval of the campground's operation from April 1 to December 1 annually. The application itself, as well as the cover letter accompanying it, stated that the application "should not be deemed to be a waiver of any rights or claims of Mr. Fortin or Onion River Campground with regard to" the Notice of Violation appeal then pending in Environmental Court as Docket No. 94-5-08 Vtec. On January 18, 2009, the DRB granted conditional use approval for Appellant to operate the campground from April 1 to December 1 annually;[4] however, the approval included the following Condition 1, contested in this appeal:

> Campground visitors are not permitted to establish residency. The campground must continue to operate as a Travel Trailer Park as defined in the Zoning Regulations, serving temporary visitors only.

January 2009 DRB Decision, at 5. The term "travel trailer" is defined as "[a] registered vehicle utilized for camping or other temporary use, and not occupied as a dwelling for over a period of three (3) months in a calendar year." 2009 Zoning Regulations § 180.

---

[4] The Notice of Violation was later withdrawn and the appeal dismissed due to the subsequent approval of Appellant's conditional use application.

Appellant raises two issues in his appeal of the DRB's conditional use approval: whether conditional use approval is required for Appellant "to continue operating his campground from April 1st to December 1st annually," and, if it is required, whether this Court will grant such approval, presumably absent the contested condition.

<u>Whether conditional use approval is required</u>

The term "campground" is not defined in the Zoning Regulations. Although the terms "travel trailer," "travel trailer park," "mobile home," and "mobile home park" are defined in § 180 of the Zoning Regulations, neither "travel trailer park" nor "mobile home park" appears as a listed conditional use category (or as a permitted use category) in any of the zoning districts. Rather, mobile homes are treated as single-family dwellings, and mobile home parks are treated as Planned Unit Developments. See 2009 Zoning Regulations § 300 (Equal Treatment of Housing).

A travel trailer park or campground is evidently treated as a "commercial use," as that was the basis in the DRB's decision for considering it as a conditional use in the Agricultural and Rural Residential zoning district. January 2009 DRB Decision, at 2. A commercial use is required to meet all the requirements of § 245 of the Zoning Regulations for conditional use approval, and also must meet the additional requirement in the Agricultural and Rural Residential zoning district "that such [use] is appropriate in the District and will not be detrimental to the other uses within the District or to the adjoining land uses." 2009 Zoning Regulations § 420, Conditional Uses ¶ 3.

Section 280(1) of the Zoning Regulations allows a nonconforming use to be continued, provided that it has not been abandoned or discontinued, as discussed further in that subsection. Material facts are in dispute, or at least have not been provided to the Court, as to when any particular zoning regulation was adopted that rendered the campground a nonconforming use, that is, as to when and in what respect

5

the campground became nonconforming. Material facts are also disputed, or at least have not been provided to the Court, as to whether or when the campground use was changed, abandoned, discontinued, or expanded beyond the use as it stood whenever it became nonconforming.

By applying for conditional use approval of the campground's operation from April 1 through December 1, Appellant did not waive his right to argue that the operation of the campground during that period, or, indeed, year-round, was a preexisting, nonconforming use that could continue to operate without a permit. Appellant explicitly preserved that argument in his application for conditional use approval, as well as in his appeal of the Notice of Violation, Docket No. 94-5-08 Vtec.

Residency at the campground

It is not clear where in the Zoning Regulations the DRB or the Zoning Administrator derived the requirement that campground visitors not be permitted to "establish residency," nor is the term "residency" defined in the Zoning Regulations. A travel trailer is defined as "for camping or other temporary use," and "not occupied as a dwelling for over a period of three (3) months in a calendar year." 2009 Zoning Regulations § 180. Unlike the definition of "camp," which is defined as a seasonal dwelling unit that is not "occupied for more than 12 weeks at any given time" and not "for more than 6 months in any given year," id., the definition of travel trailer does not limit the amount of occupancy at any given time. The parties have not briefed the issue of whether the definition of travel trailer allows a travel trailer to be parked at a camp site for longer than a three-month period, as long as it is not occupied "as a dwelling" for a total of more than three-months'-worth of days in any year. Furthermore, material facts are in dispute, or at least have not been provided to the Court, as to the amount of time Appellant seeks to allow guests at the campground to occupy a parked travel

6

trailer, as well as the amount of time Appellant seeks to allow an individual travel trailer to remain parked in the same camp site at any given time.

<u>Effect of Zoning Administrator's 2005 letter</u>

Section 280(2) of the Zoning Regulations provides that a nonconforming use that is converted to a conforming use loses any rights to revert to a previous nonconforming use. The Town argues that the limitations in the Zoning Administrator's 2005 letter cannot now be contested by Appellant, as he did not appeal that letter to the DRB. See 24 V.S.A. § 4472(d).

First, nothing about that letter constituted a permit, or converted the campground to a conforming use. At best the letter was an unlabeled notice of violation.

However, regardless of whether the letter is binding, the statement that "[w]e understand that you will voluntarily come into compliance with Marshfield's Zoning Regulations" leaves open the issue of whether the operation of the campground as of the 2005 letter was a preexisting, nonconforming use already "in compliance with" the nonconforming use provisions of the then-Zoning Regulations. As the Court has not been given the Zoning Regulations in effect at that time, this issue cannot now be resolved on summary judgment.

Regardless of whether the letter is binding, the statement that "[w]e understand that . . . the use of the campground will revert to seasonal use only (May 15 to October 15)" has been superseded by the merits of the present application, as the approval of the extended dates of operation is not contested in this appeal.

Regardless of whether the letter is binding, the statement that "[w]e further understand that there will be no individuals residing on the property other than in your residence" does not resolve the issue of the extent to which the term "residing" relates to the issues of "occupancy as a dwelling" discussed above regarding "residency."

7

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both summary judgment motions are DENIED, as material facts are in dispute, as discussed in this decision, except that Appellant's Motion for Summary Judgment is GRANTED in that Appellant did not waive his right to assert that the campground is a preexisting, nonconforming use.

A telephone conference has been scheduled (see enclosed notice) to discuss whether the parties wish to renew their motions with additional documentation, or whether this matter should be set for trial.

Done at Berlin, Vermont, this 14th day of December, 2009.

_____

Merideth Wright
Environmental Judge

8