VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT  05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 21-ENV-00037



| | |
|---|---|
| 40 Kingsland Terrace Garage & ADU Permit | DECISION ON MOTION |

Appellants Mark Stephenson and Linda Jones (Appellants) seek a partial summary judgment in this appeal from a final decision issued by the City of Burlington's Development Review Board (DRB).  In its April 8, 2021 decision, the DRB approved the Certificate of Appropriateness/Conditional Use application submitted by Katie Menson and Kellen Brumsted (Applicants) to replace the existing garage on their property with a new structure containing an accessory dwelling unit (ADU).  Appellants request summary judgment on Questions 1 and 2 of their Statement of Questions, which contains five questions.

Appellants are represented by Attorney Nicholas Low.  Applicants and the City of Burlington have both responded in opposition to this motion for partial summary judgment and are represented by Attorney Liam Murphy and Attorney Kimberlee Sturtevant, respectively.

**Legal Standard**

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5.  The nonmoving party "receives the benefit of all reasonable doubts and inferences," but must respond with more than unsupported allegations in order to show that material facts are in dispute.  Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.  For the purposes of the motion, the Court "will accept as true the allegations made in opposition to . . . summary judgment, so long as they are

supported by affidavits or other evidentiary material." Id.; Pettersen v. Monahan Safar Ducham, PLLC, 2021 VT 16, ¶ 9.

### Findings of Fact

After reviewing the facts alleged in the parties' filings, the Court finds the following to be undisputed. The facts set out below do not constitute factual findings with relevance outside of this summary judgment decision. See Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14 (citing Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.)). The Court relies on these facts for the sole purpose of deciding on the request for partial summary judgment.

1. Applicants Katie Menson and Kellen Brumsted propose to demolish an existing garage on their property located at 40 Kingsland Terrace in Burlington, VT, and to replace it with a new structure.

2. The existing garage is a 320 square foot pyramidal-hip roofed structure that is listed on the National Register of Historic Places.

3. The proposed structure would be larger than the existing garage, with a 22' x 30' footprint and two floors.

4. Applicants' proposal includes a garage on the first floor and a living space on the second floor. In the proposal, the living spaces are contained to the second floor and include a single bedroom, bathroom, and kitchen. Access to the second floor is through the entry on the first floor that has an enclosed foyer and staircase. The proposed floorplan shows a separate door for the garage and no indoor connection between the foyer and the garage. Exterior features include an unenclosed balcony on the second floor and a covered but unenclosed entryway outside the exterior door that provides access to the living space. Appellants' Exhibit A.

5. Applicants propose to share use of the garage in the new structure with the occupants of the second floor.

6. Applicants live in the primary structure at 40 Kingsland Terrace, which has a gross floor area of 2,686 square feet.

**Discussion**

1.  **Should the application be denied because it proposes an accessory dwelling unit that exceeds maximum square footage allowed under Burlington CDO § 5.4.5 and 24 V.S.A. § 4412(1)(E)?**

An ADU located within or appurtenant to a single-family dwelling is considered a permitted use under § 5.4.5(a) of the Burlington CDO and the enabling state statute, 24 V.S.A. § 4412(1)(E), provided it conforms to certain requirements. See CDO § 5.4.5(a); 24 V.S.A. § 4412(1)(E). Under the Burlington CDO, an ADU must "not consist of more than 800 sq.ft., or 30 percent (30%) of the Gross Floor Area of the principal home, whichever is greater" among other criteria. CDO § 5.4.5(a)(2). This limitation on the size of an ADU is more restrictive than that set by the Vermont Legislature, which requires that "the unit does not exceed 30 percent of the total habitable floor area of the single-family dwelling or 900 square feet, whichever is greater." 24 V.S.A. § 4412(1)(E)(ii). By statute, the proposed ADU in this case can have up to 900 square feet, which is greater than the 805.8 square feet (30 percent of the 2,686 square-foot principal home on the Property) that the Burlington CDO would allow. The parties consequently agree that § 4412(1)(E) supersedes the more restrictive limitation in the Burlington CDO, and that 900 square feet is the applicable standard.

Appellants support their request for summary judgment on this question by first arguing that the square footage of the proposed structure as a whole exceeds the 900 square-foot limitation on the size of an ADU. This argument entails characterizing the entire two-story proposal as an ADU, including the square footage of the garage and the unenclosed entryway and balcony along with the square footage of the enclosed entry (foyer), staircase, and living spaces on the second floor. In the alternative, if the Court finds that the garage is not part of the ADU, Appellants argue that it would still exceed the maximum square footage.

Appellants assert that the garage should be included in the square footage of the ADU because it is physically and functionally part of the ADU. While the proposal locates the garage in the same building as the living spaces and may be non-exclusively used by future occupants of the ADU, the floor plans in Appellants' Exhibit A show clear physical and functional delineation within the proposed structure. The proposed structure has separate entrances for the ADU and

3

the garage. The living spaces that make up the ADU are confined to the second floor, while the garage is on the first floor. The only section of the first floor that would be solely used for the ADU is the foyer with the staircase to the second floor. The foyer does not provide access to the garage, and the garage cannot otherwise be accessed from inside the ADU. With its own kitchen, bathroom, and bedroom, the proposed ADU is a "distinct unit" within the proposed structure that aligns with the statutory definition of an ADU. 24 V.S.A. § 4412(1)(E) ("a distinct unit that is clearly subordinate to a single-family dwelling, and has facilities and provisions for independent living, including sleeping, food preparation, and sanitation"). That future occupants of the ADU may use the garage along with the Applicants does not erase the clear physical and functional distinction between the habitable living spaces (and the foyer providing access to them) that make up the ADU and the garage.

Further, Appellants do not suggest that Applicants intend to allow the garage to be used for something other than a garage, nor to design it in a manner that could accommodate use as a living space. Use of the garage as a garage, along with the unenclosed areas of the proposed structure, does not transform those areas into habitable space that could count towards the statutory limitation on square footage. Whether the space is "habitable" matters to the square footage assessment because the statute requires that "[t]he unit does not exceed 30 percent of the total habitable floor area of the single-family dwelling or 900 square feet, whichever is greater." 24 V.S.A. § 4412(1)(E). In the absence of any specification as to how to calculate the square footage of the unit itself, the Court follows its previous interpretation of the statute which applied "habitable floor area" to measurements of both the primary structure and the unit. In re Gould Accessory Building Permit, No. 14-1-12 Vtec., slip. op. at 7 (Vt. Super. Ct. Envtl. Div. Oct., 31, 2012) (Walsh, J.) ("To give effect to the intent of this statutory provision, the general term "unit" should be interpreted to refer to the specific measurement of "habitable floor-area"). The statute does not define "habitable floor area," but a plain, common-sense understanding of the scope of the term "habitable" would not include a space designed for the storage of vehicles nor an unenclosed, exterior balcony and entryway. See In re Laberge Moto-Cross Track, 2011 VT 1, ¶ 8, 189 Vt. 578, 580 (explaining that in order to interpret a statute according to legislative intent, the Court begins by construing "words according to their plain and ordinary meaning").

4

This understanding of the statutory limitation on the size of an ADU is also supported by the principle that zoning regulations "are in derogation of common law property rights" and consequently "must be construed narrowly in favor of the property owner." In re Application of Lathrop Ltd. Partnership I, 2015 VT 49, ¶ 29, 199 Vt. 19; Appeal of Weeks, 167 Vt. 551, 555 (1998) ("in construing land use regulations any uncertainty must be decided in favor of the property owner"). The Court is not persuaded by Appellants' argument that the ADU consists of the entire proposed structure and instead adopts the more permissive interpretation of 24 V.S.A. § 4412 that favors Applicants by only counting habitable floor-area inside the proposed structure toward the 900 square-foot limitation.

Appellants alternatively argue that the proposed ADU exceeds 900 square feet by itself, without counting the garage toward the statutory limitation. Subtracting an estimated 336.25 square feet of garage space from a total of 1398 square feet for the entire structure, Appellants attribute 1061.75 square feet to the ADU or 942.75 square feet without the approximately 79 square-foot balcony and 40 square-foot unenclosed entryway. While these estimations appear to be based on the floor plans in Appellants' Exhibit A, some aspects of the calculations are not supported by the summary judgment record. First, Appellants obtained the area of the main section of the garage by multiplying 30' by 10'-4'' instead of 30' by 14' as labeled in Appellants' Exhibit A. Additionally, Appellants did not include the square footage of the first-floor room labeled "Mech." in their total for garage and as a result it contributed to their total for the ADU. Appellants did not provide any explanation as to the use of the room or why it should be considered part of the ADU.

The Court finds a genuine dispute of material fact as to whether the ADU exceeds the allowable 900 square feet. Applicants assert that the proposed ADU consists of an approximately 660 square-foot living space on the second floor and an approximately 100 square-foot foyer on the first floor, which amounts to a compliant total of 760 square feet. This calculation is supported by the measurements in the floor plans in Appellants' Exhibit A, and the undisputed 22' x 30' footprint for the proposed structure with about 660 square feet per floor. Summary judgment is not appropriate on this question in light of Applicants' well-supported opposition to

Appellants' representation of the size of the proposed ADU and the evidentiary concerns surrounding those calculations.

**2. Should the Application be denied because it fails to meet standards and guidelines for Historic Buildings and Sites at Burlington CDO § 5.4.8(b)?**

As a structure listed on the National Register of Historic Places, the existing garage on the Property is subject to the provisions of § 5.4.8 of the Burlington CDO, which has four subsections. See CDO § 5.4.8(a). Subsection (b) sets out a list of ten "standards and guidelines" that apply to the review of all applications involving historic buildings, while subsections (c) and (d) specifically regard demolitions of historic buildings. §§ 5.4.8(b) – (d).

Appellants focus their argument on the first standard listed in § 5.4.8(b), which states that "[a] property will be used as it was historically or be given a new use that requires minimal change to its distinctive materials, features, spaces, and spatial relationships." CDO § 5.4.8(b)(1). Characterizing this standard as a requirement, Appellants assert that replacing the existing garage with the proposed structure will violate the provision by amounting to more than a "minimal change." Appellants additionally argue, should the Court find that the garage and ADU are separate uses, that § 5.4.8(b)(1) expressly prohibits Applicants from replacing a single-use historic structure with a new multiuse structure.

The Burlington CDO instructs that the standards listed in § 5.4.8(b) are a "series of concepts about maintaining, repairing and replacing historic features, as well as designing new additions or making alterations" which are "intended to be applied in a reasonable manner, taking into consideration economic and technical feasibility." CDO § 5.4.8(b). As such, the provision Appellants cite is not a firm requirement to be applied rigidly in all cases but instead in "a reasonable manner" that depends on the facts of the situation. While demolishing the existing garage and building a larger structure in its place could involve more than a minimal change, whether the proposal could still meet this standard requires considering more facts than Appellants have provided. For instance, Appellants have not supported their argument with facts relevant to the existing condition of the structure, its historic use, or of the ability to comply with either option in the standard. The Court cannot determine how the standard in § 5.4.8(b)(1) should be met without any facts as to the cost and feasibility of continuing the historical use in

6

the structure's current condition or of alternatives for repair and replacement. Appellants additionally overstate the strength of the language "or be given a new use" when they suggest that it explicitly prohibits a change from one to two uses.

The § 5.4.8(b)(1) standard should also be understood in the context of § 5.4.8 as a whole, which contains multiple subsections that contribute to the regulation of historic buildings and sites. See In re Midway Charters Ventures, LLC, No. 41-3-19 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Aug. 29, 2019) (Durkin, J.) ("[t]he Court endeavors to give effect to 'the whole and every part' of the ordinance, approaching the ordinance as a unified system of regulation") (quoting Brown v. W.T. Martin Plumbing & Heating, Inc., 2013 VT 38, ¶ 20, 194 Vt. 12). It would not make sense for the Court to find that the proposal should be denied under § 5.4.8(b) for involving a demolition of a historic structure when § 5.4.8(d) specifically permits the demolition of historic structures in certain circumstances. The standards for review of a demolition in § 5.4.8(d) may be more applicable to the instant proposal and consequently more controlling. Summary judgment is not appropriate on this question because Appellants have failed to establish that the proposal does not meet § 5.4.8(b)(1). Additionally, it may not be possible to answer this question without considering § 5.4.8(d), which is the subject of Question 3 in the Statement of Questions and outside the scope of this motion.

## Conclusion

For the foregoing reasons, Appellants' motion for partial summary judgment on Questions 1 and 2 of their Statement of Questions is **DENIED**.

Electronically Signed: 3/2/2022 2:46 PM pursuant to V.R.E.F. 9(d).

Thomas G. Walsh, Judge
Superior Court, Environmental Division

7